<u>NOT FOR PUBLICATION</u>

## UNITED STATES DISTRICT COURT
## DISTRICT OF NEW JERSEY

FELICIA PEARSON,

     *Plaintiff*,

       **v.**

CAROLYN W. COLVIN, Acting
Commissioner of Social Security,

     *Defendant.*

Civil Action No. 14-4666

OPINION

ARLEO, UNITED STATES DISTRICT JUDGE

     Before this Court is Plaintiff Felicia Pearson's ("Plaintiff") request for review, pursuant to 42 U.S.C. §§ 1383(c)(3), 405(g) of the Commissioner of Social Security Administration's ("Commissioner") denial of supplemental security income benefits ("disability benefits") to Plaintiff.   Plaintiff argues that the Commissioner's decision is not supported by substantial evidence because the opinion: (1) does not comply with the Appeals Council's remand order; (2) fails to consider the "A" criteria for the relevant Medical Listings ("Listings") in the step three analysis; (3) fails to find appropriate mental restrictions and manipulative restrictions in the residual functional capacity assessment ("RFC") under step four; (4) does not give controlling weight to the opinion of Plaintiff's alleged treating physician; and (5) improperly characterizes the testimony of the vocational expert ("VE") at step five.   For the reasons set forth in this Opinion, the Court finds that the Commissioner's decision must be **AFFIRMED**.

    I.     STANDARD OF REVIEW AND APPLICABLE LAW

        A.  Standard of Review

This Court has jurisdiction to review the Commissioner's decision under 42 U.S.C. § 405(g). This Court must affirm the Commissioner's decision if substantial evidence supports the decision. 42 U.S.C. § 405(g); Markle v. Barnhart, 324 F.3d 182, 187 (3d Cir. 2003). Substantial evidence, in turn, "means such relevant evidence as a reasonable mind might accept as adequate." Ventura v. Shalala, 55 F.3d 900, 901 (3d Cir. 1995). Stated differently, substantial evidence consists of "more than a mere scintilla of evidence but may be less than a preponderance." Newell v. Comm'r of Soc. Sec., 347 F.3d 541, 545 (3d Cir. 2003).

"[T]he substantial evidence standard is a deferential standard of review." Jones v. Barnhart, 364 F.3d 501, 503 (3d Cir. 2004). Accordingly, the standard places a significant limit on the district court's scope of review. The reviewing court should not "weigh the evidence or substitute its conclusions for those of the fact-finder." Williams v. Sullivan, 970 F.2d 1178, 1182 (3d Cir. 1992). Therefore, even if this Court would have decided the matter differently, it is bound by the Commissioner's findings of fact so long as they are supported by substantial evidence. Hagans v. Comm'r of Soc. Sec., 694 F.3d 287, 292 (3d Cir. 2012).

In determining whether there is substantial evidence to support the Commissioner's decision, the Court must consider: "(1) the objective medical facts; (2) the diagnoses of expert opinions of treating and examining physicians on subsidiary questions of fact; (3) subjective evidence of pain testified to by the claimant and corroborated by family and neighbors; and (4) the claimant's educational background, work history, and present age." Blalock v. Richardson, 483 F.2d 773, 776 (4th Cir. 1972).

### B.  Five-Step Sequential Analysis of Adult Disability

In order to determine whether an adult claimant is disabled, the Commissioner must apply a five-step test. 20 C.F.R. § 404.1520(a)(4). First, it must be determined whether the claimant is

currently engaging in "substantial gainful activity."  20 C.F.R. § 404.1520(a)(4)(i).  "Substantial

gainful activity" is defined as work activity, both physical and mental, that is typically performed

for either profit or pay.  20 C.F.R. § 404.1572.  If it is found that the claimant is engaged in

substantial gainful activity, then he or she is not disabled and the inquiry ends.  Jones, 364 F.3d at

503.  If it is determined that the claimant is not engaged in substantial gainful activity, the analysis

moves on to the second step: whether the claimed impairment or combination of impairments is

"severe."  20 C.F.R. § 404.1520(a)(4)(ii).  An impairment or combination of impairments is severe

only when it places a significant limit on the claimant's "physical or mental ability to do basic

work activities."  20 C.F.R. § 404.1520(c).  If the claimed impairment or combination of

impairments is not severe, the inquiry ends and benefits must be denied.  Id.; Ortega v. Comm'r

of Soc. Sec., 232 F. App'x 194, 196 (3d Cir. 2007).

At the third step, the Commissioner must determine whether there is sufficient evidence

showing that the claimant suffers from a listed impairment.  20 C.F.R. § 404.1520(a)(4)(iii).  If so,

a disability is conclusively established and the claimant is entitled to benefits.  Jones, 364 F.3d at

503.  If not, the Commissioner, at step four, must ask whether the claimant has "residual functional

capacity" such that he is capable of performing past relevant work; if that question is answered in

the affirmative, the claim for benefits must be denied.  Id.  Finally, if the claimant is unable to

engage in past relevant work, the Commissioner must ask, at step five, "whether work exists in

significant numbers in the national economy" that the claimant is capable of performing in light

of "his medical impairments, age, education, past work experience, and 'residual functional

capacity.'"  20 C.F.R. §§ 404.1520(a)(4)(iii)-(v); Jones, 364 F.3d at 503.  The claimant bears the

burden of establishing steps one through four, while the burden of proof shifts to the Commissioner

at step five.  Bowen v. Yuckert, 482 U.S. 137, 146 n.5 (1987).

II.   **DISCUSSION**

**A.  Procedural History**

This case arises out of a September 28, 2018, application for supplemental security income filed on behalf of the Plaintiff, Felicia Pearson.  Tr. 23, 245-247.  This application was denied initially on January 2, 2009, and on reconsideration on May 6, 2009.  Tr. 123-127, 131-132.  Plaintiff then sought review before an administrative law judge, and a hearing before the Honorable Richard West (the "ALJ") occurred on August 12, 2012.  Tr. 60-97.  Following that hearing, the ALJ issued an opinion on October 1, 2010, finding that Plaintiff was not disabled under the standards for adult disability.  Tr. 103-11.  Plaintiff's subsequent request for review by the Appeals Council was granted on September 25, 2012.  Tr. 116-118.  As a result, the ALJ held a supplemental hearing on November 30, 2012.  Tr. 30-59.  On January 16, 2013, the ALJ issued a new decision, again finding that Plaintiff was not disabled.  Tr. 12-25.  The ALJ's decision became the final decision of the Commissioner when the Appeals Council denied Plaintiff's request for review on May 30, 2014.  Tr. 1-3.  Having exhausted her administrative remedies, Plaintiff then timely filed the instant action on July 25, 2014.  Dkt. No. 1, Compl.

**B.  Factual Background**

Plaintiff is a fifty-five year old woman who alleged disability due to anxiety, depression, asthma, cataract in right eye, and herniated discs in the upper and lower back.  Tr. 24-25, 280.  Despite these conditions, Plaintiff is still able to socialize with her friends and boyfriend, go shopping, and perform household activities.  Tr. 478.  Plaintiff takes Alprazalam for her anxiety, Zoloft for her depression, Naproxen for her pain, and Advair Diskus for her asthma, along with Gabapentin, Singulair, Corbite vitamins, and Alrex.  Tr. 326.

Plaintiff has at least a high school education.  Tr. 45-46, 65.  She has no past relevant work experience, and her earnings met the substantial gainful activity level in only two years of her earnings history—1980 and 1989.  Tr. 23, 250, 270.

The medical evidence relevant to the time period of Plaintiff's application for benefits shows that Plaintiff apparently was a pedestrian involved in a motor vehicle accident which occurred around February 2008.  Tr. 503.  She did not go to the hospital, but underwent chiropractic treatment.  Tr. 503.  Plaintiff ultimately had an MRI to her cervical spine performed in April 2008, which showed a C4-5 central herniation, disc bulges at C5-6 and C6-7, and reversal of the normal lordotic curve with an associated levocurvature.  Tr. 519.

Praful Shah, M.D., an internist, completed a "General Medical Report" on Plaintiff's behalf in March 2009. Tr. 520-23.  Dr. Shah set forth Plaintiff's diagnoses as bronchial asthma, history of cervical and lumbar radiculopathy, depression, and anxiety/panic syndrome, and that her treatment consisted of medication.  Tr. 521.  When asked if he could provide a medical opinion regarding Plaintiff's ability to do work-related activities, he checked off the box stating "no," but then proceeded to state that, during an eight-hour workday, Plaintiff could lift/carry a maximum of ten pounds, stand/walk less than two hours, sit less than six hours, could perform limited pushing/pulling, and had no limitation in handling objects, hearing, speaking, or traveling.  Tr. 521-23.

Plaintiff underwent a psychological evaluation by Ronald G. Silikovitz, Ph.D., in April 2009, at the request of the state agency.  Tr. 475.  Plaintiff stated that she last worked full time in 2003, in a dietary position at a rehabilitation center which lasted four months.  Tr. 476.  She indicated that the position ended because her asthma was acting up, and that "I lost a lot of jobs because of it." Tr. 476.  Plaintiff further related that she used heroin from 1993 to 1996, but then

went on methadone, and has been off methadone and drug-free for 12 years.  Tr. 476.  When asked why she was disabled, Plaintiff replied, "allergies, asthma. I suffer from anxiety and depression."  Tr. 477.  She noted that she had surgery for a cataract in her right eye, and that issue had been corrected.  Tr. 477.  She also reported a herniated disc in her neck.  Tr. 477.  Psychologist Silikovitz diagnosed major depression, recurrent, moderate; and generalized anxiety disorder, moderate; and assessed Plaintiff with a GAF of 57, which indicates moderate symptoms.  Tr. 478.

Sharon Flaherty, Ph.D., a state agency psychologist, reviewed Plaintiff's claim for benefits in May 2009, and opined that Plaintiff "retains the mental ability to sustain concentration, focus, pace and persistence."  Tr. 499.

Dr. Shah completed a "State of New Jersey Division of Family Development" Examination Report on Plaintiff's behalf in May 2009.  Tr. 532-33.  Dr. Shah stated that, due to Plaintiff's bronchial asthma and anxiety/panic syndrome with depression, Plaintiff was disabled for twelve months or more.  Tr. 532-33.  Dr. Shah completed a second "State of New Jersey Division of Family Development" Examination Report on Plaintiff's behalf in April 2010. Tr. 530-31.  Dr. Shah again opined that Plaintiff would be disabled for "12 months or more."  Tr. 530-31.

After Plaintiff's initial hearing, the ALJ referred her for an orthopedic examination, which was performed in August 2010, by Rashel Potashnik, M.D.  Tr. 538.  Plaintiff reported that she could not work due to lupus; hand cramps; pain in the wrists, hands, forearms, and knees; and numbness in the toes.  Tr. 538.  Dr. Potashnik's impression was that Plaintiff was an undernourished female with arthralgia and complaints/examination findings suggestive of carpal tunnel syndrome.  Tr. 539.  Dr. Potashnik further stated that Plaintiff's gait was normal without an assistive device, and that she was "limited in activities requiring heavy lifting."  Tr. 539.  Dr. Potashnik completed a Passive Range of Motion Chart showing that plaintiff had 4-5 grip and

pinch strength in her hands bilaterally (with 5 being normal). Tr. 540. Dr. Potashnik also completed a "Medical Source Statement of Ability to Do Work-Related Activities (Physical)" opining that, during an eight-hour workday, Plaintiff could lift/carry up to twenty pounds occasionally; sit eight hours total; stand for four hours total; walk for six hours total; use her hands for reaching, handling, fingering, feeling, and pushing/pulling occasionally to frequently; occasionally operate foot controls; never climb stairs, ramps, ladders, or scaffolds or balance (due to alcohol and drug use); occasionally stoop, kneel, crouch, and crawl; and, due to a history of asthma and anxiety, should not work around environmental irritants. Tr. 542-46. Dr. Potashnik further opined, among other things, that Plaintiff was capable of sorting, handling, and using paper files. Tr. 547.

Dr. Shah completed a "Residual Functional Capacity Form Physical" on Plaintiff's behalf in September 2010, after Plaintiff's initial hearing and after Dr. Potashnik's examination, opining that, during an eight-hour workday, Plaintiff could lift/carry a maximum of only two pounds occasionally; stand/walk for one hour total; sit for one hour total; never perform any postural activities; had limitations in reaching, handling, and pushing/pulling; and had environmental restrictions in all areas except working around heights. Tr. 548-51. Plaintiff submitted no actual treatment records from Dr. Shah other than lab study reports attached to Dr. Shah's forms. Tr. 524-27, 552-57.

A vocational expert testified at the supplemental administrative hearing. Tr. 57. The ALJ asked the vocational expert to assume an individual of Plaintiff's age, education, and experience, who was restricted to light work limited to occasional operation of foot controls; occasional climbing, balancing, stooping, kneeling, crouching, and crawling; avoiding all exposure to hazards; avoiding concentrated exposure to dust, fumes, and similar occupational irritants; work

requiring understanding, remembering, and carrying out only simple instructions, but with the ability to respond appropriately to supervisors and co-workers in usual work situations, and to deal with changes in a routine work setting. Tr. 47. The vocational expert testified that, despite those limitations, such an individual could perform representative light work as a microfilm mounter, decal applier, and assembler. Tr. 48. When asked to further assume that such individual could only have occasional interaction with the general public and co-workers, and could only have occasional changes to essential job functions, the vocational expert testified that all of the representative jobs identified could still be performed. Tr. 48. When asked to additionally assume that such individual could only frequently reach, handle, finger, feel, and push/pull with her arms, the vocational expert testified that the representative jobs named could still be performed. Tr. 49.

### C. The ALJ's Decision

The ALJ found that plaintiff had not engaged in substantial gainful activity since September 2008, the month she filed her SSI application. Tr. 14. The ALJ determined that Plaintiff had "severe" impairments consisting of asthma, history of positive rheumatoid factor, polysubstance abuse, anxiety, depression, degenerative disc disease of the cervical spine, and hepatitis C. Id. The ALJ concluded that Plaintiff's impairments did not meet or medically equal the criteria of any impairment in the Listings. Tr. 15. The ALJ subsequently found that Plaintiff retained the residual functional capacity to perform a wide range of light work. Tr. 16.

The ALJ considered Plaintiff's subjective complaints in reaching the residual functional capacity, but found that her statements concerning the intensity, persistence, and limiting effects of her reported symptoms were not entirely credible. Tr. 17-22. The ALJ found that Plaintiff had no relevant past work. Tr. 24. At the fifth step, however, the ALJ concluded that considering Plaintiff's age, education, work experience, and residual functional capacity, she could perform

other work that existed in significant numbers in the national economy.  Id.  In reaching this finding, the ALJ relied on the testimony of the vocational expert.  Tr. 24-25.  Accordingly, the ALJ concluded that Plaintiff was not disabled within the meaning of the Act, and denied her claim for SSI.  Tr. 25.

### D.  Analysis

Plaintiff alleges that the Commissioner's decision was not supported by substantial evidence because the opinion: (1) does not comply with the Appeals Council's remand order; (2) fails to consider the "A" criteria for the relevant Medical Listings in the step three analysis; (3) fails to find appropriate mental restrictions and manipulative restrictions in the residual functional capacity assessment under step four; (4) does not give controlling weight to the opinion of Plaintiff's alleged treating physician; and (5) improperly characterizes the testimony of the vocational expert at step five.  These arguments do not prevail because the ALJ's findings are supported by substantial evidence.

### 1.  Alleged Failure to Comply with the Appeals Council's Remand Order

Plaintiff argues that the Commissioner failed to comply with the Appeals Council's remand order.  The Court disagrees.

42 U.S.C. § 405(g) does not provide this Court with authority to review intermediate agency actions that occur because the issuance of the agency's "final decision."  Here, Plaintiff specifically challenged the ALJ's compliance with the remand order.  Tr. 333-34.  Nonetheless, the Appeals Council denied Plaintiff's request for review.  Tr. 1-3.  The Appeals Council specifically stated that it considered "the reasons [Plaintiff] disagree[s] with the decision."  Tr. 1-3.  Consequently, only the ALJ's second decision—the "final decision"—is on review here.  See Bull v. Commissioner of Social Sec., No. 12-183, 2013 WL 499248, at *8 (E.D. Va. Jan. 3, 2013)

(stating that because the Appeals Council had refused to review the ALJ's decision after its remand, it became the final decision of the Commissioner, and the court could "only consider the evaluations of the ALJ in his second decision" under 42 U.S.C. § 405(g)); see also Bass v. Astrue, No. 06-591, 2008 WL 3413299, at *4 (M.D. N.C. Aug. 8, 2008) (stating that "[t]he Court does not review internal agency-level proceedings, and therefore will not address whether the ALJ complied with specific provisions of the Appeals Council's remand order"); Harris v. Astrue, No. 09-385, 2010 WL 816145, at *7 (W.D. Wash. Mar. 8, 2010); Riddle v. Astrue, No. 06-004, 2009 WL 804056, at *19 (M.D. Tenn. Mar. 25, 2009).  The appropriate focus for review is upon the ALJ's final decision, not the prior Appeals Council remand order.

### 2. ALJ's Alleged Failure to Consider the "A" Criteria for the relevant Medical Listings in the Step Three Analysis

Plaintiff argues that the ALJ's consideration of Plaintiff's mental impairment at step three is defective because the ALJ "combined" Listings 12.04 and 12.06, ignored the "A" criteria of these listings, and only discussed the "B" criteria.  The Court is not persuaded.

The Listings bestow an irrefutable presumption of disability; consequently, "[f]or a claimant to show that her impairment matches a [listed impairment], it must meet all of the specified medical criteria."  Sullivan v. Zebley, 493 U .S. 521, 530 (1990).  To establish medical equivalency, a claimant must present medical evidence that his impairment, unlisted impairment, or combination of impairments, is equal in severity and duration to all of the criteria of a listed impairment.  Id. at 520; see also 20 C.F.R. § 416.926.  Plaintiff fails to present any medical evidence that she meets all the specified medical criteria of a listed impairment.

Even assuming that Plaintiff meets the "A" criteria of both listings, the medical evidence in the record clearly proves that she has not met her burden of proving that she met the "B" criteria of these listings.  Furthermore, there is no merit to Plaintiff's argument that she does not "know

what evidence" led to the ALJ's conclusions regarding the "B" criteria of the listings.  Pl.'s Br. at

24.  The ALJ relied upon the findings of Sharon Flaherty, Ph.D., a state agency psychologist, who

found the claimant was "mildly limited in activities of daily living and maintaining social function;

and moderately limited in maintaining concentration, persistence or pace."  Tr. 20, 493.  Moreover,

Psychologist Flaherty determined that "claimant had one to two episodes of decompensation of

extended duration."  Id.  The ALJ summarized these findings under the step three analysis.  Tr. 16.

Plaintiff has not identified any error here.  The ALJ acknowledged Plaintiff's mental

impairment and considered its impact under the appropriate standards.  See Tr. 16.  This

consideration involved a review of the relevant medical evidence, and it was adequate.  Plaintiff

has the burden of showing that her impairments meet a listed impairment, and she has fallen

considerably short.  See Bowen, 482 U.S. at 146 n.5 (1987).

### 3. Alleged Failure to Find Appropriate Mental Restrictions and Manipulative Restrictions in the Residual Functional Capacity Assessment Under Step Four

Plaintiff next argues that the ALJ's residual functional capacity assessment is not supported

by substantial evidence because (1) the ALJ did not find appropriate mental restrictions and (2)

the ALJ did not find manipulative restrictions.  The Court disagrees.

There is substantial evidence in the record supporting the ALJ's conclusion that,

notwithstanding certain limitations, Plaintiff has the residual functional capacity to perform light

work as defined in 20 C.F.R. § 416.967(b).  Considering Plaintiff's mental impairments, the ALJ

relied on Psychologist Flaherty's opinion that Plaintiff retains the mental ability to sustain

concentration, focus, pace and persistence.  Tr. 24, 499.  Moreover, Plaintiff fails to provide

evidence demonstrating that her mental impairments actually limit her ability to perform the jobs

identified by the vocational expert.  Plaintiff testified that her mental impairments limit her in the

workplace because she "prefer[s] not to even be around people."  Tr. 75.  When the ALJ asked the vocational expert to assume that Plaintiff could only have occasional interactions with coworkers and occasional changes to essential job functions, the vocational expert testified that all of the representative jobs identified could still be performed.  Tr. 48.

In regard to Plaintiff's manipulative restrictions, the ALJ relied on the findings of Dr. Rashel Potashnik, a consultative examiner who conducted an orthopedic examination of the Plaintiff on August 30, 2010.  Tr. 23.  Dr. Potashnik's report indicates that Plaintiff is able to use her hands bilaterally (i.e. reaching, handling, fingering, feeling, pushing/pulling) on an occasional to frequent basis.  Tr. 544.  The ALJ directed the vocational expert to assume that Plaintiff could only frequently reach, handle, finger, feel, and push/pull with her arms, and the vocational expert testified that the representative jobs could still be performed.  Tr. 49.  Based on Dr. Potashnick's report, there is substantial evidence in the record to support the ALJ's opinion.

Plaintiff asserts that the ALJ's RFC "contains absolutely no manipulative restrictions whatsoever."  Tr. 29.  The ALJ explicitly noted Plaintiff's manipulative restrictions while discussing Dr. Potashnik's findings: "Even though Dr. Potashnik suggested the claimant might have carpal tunnel syndrome, her assessment did not mention the type of limitations that would be expected for someone with severe rheumatoid arthritis of the hands."  Tr. 22.  The ALJ went on to note that Dr. Potashnik's "assessment accounted for the claimant's limitation by assessing her at light work to avoid the necessity for heavy lifting and carrying."  Id.

Plaintiff has not identified any error.  There was no compelling evidence ignored by the ALJ when developing Plaintiff's RFC.  The ALJ adequately considered Plaintiff's mental and manipulative impairments before concluding, based on substantial evidence, that she was capable of performing the light work identified by the RFC.

### 4.   Alleged Improper Dismissal of the Plaintiff's Treating Physician

Plaintiff contends that, based on Third Circuit precedent, the ALJ should have given controlling weight to Dr. Shah's opinion because he was Plaintiff's treating physician.  The Court disagrees.

First, the Court is unable to locate any actual treatment notes from Dr. Shah, apart from the lab reports attached to his forms.  Tr. 524-27, 552-57.  Without more, there is nothing to substantiate Plaintiff's assertion that Dr. Shah was actually Plaintiff's treating physician at the time he rendered the opinions at issue here.

Second, Plaintiff relies on case law predating the 1991 amendments to the regulation.  Pl.'s Br. at 29-30.  In 1991, the Agency promulgated new regulations entitled "Standards for Consultative Examinations and Existing Medical Evidence," which set forth criteria for weighing treating physician opinions in disability cases.  See 56 Fed. Reg. 36,932 (1991) (the "1991 Regulations").   The amended regulations "accord less deference to unsupported treating physician's opinions" than did previous Circuit case law.  See Schisler v. Sullivan, 3 F.3d 563, 567-68 (2d Cir. 1993).  Given that these regulations are neither outside the scope of the Secretary's authority not arbitrary and capricious, they are upheld even in the face of contrary, prior judicial precedent.  Heckler v. Campbell, 461 U.S. 458, 466 (1983); Bowen v. Yuckert, 482 U.S. 137, 145, 107 (1987) (upholding Secretary's "severity" regulation as valid under Act; rejected court's prior rule); Chevron U.S.A., Inc. v. Natural Resources Defense Council, Inc., 467 U.S. 837, 841-45 (1984) (upholding EPA regulation's construction of a statutory term despite conflicts between it and court's precedents).  As a result, the amended regulations justify the ALJ's decision to weigh the consultative medical opinions more heavily than Dr. Shah's unsubstantiated opinions.

Finally, even assuming Dr. Shah was the Plaintiff's treating physician at the time he rendered his opinions, there is sufficient medical evidence in the record to reject his opinion. Allen v. Bowen, 881 F.2d 37, 41, 42 (3d Cir. 1989). Under the pre-amendment case law, the ALJ was bound by the opinion of a treating physician if no medical evidence refuted it. Here, based on his review of the record, the ALJ found the consultative opinion evidence more persuasive and more consistent with the testimony, objective evidence, and other substantial evidence within the record than Dr. Shah's unsupported opinions. Tr. 24. Plaintiff contends that the ALJ's reason for dismissing Dr. Shah's opinion is based on some "unarticulated basis." Pl.'s Br. at 30. As the ALJ points out repeatedly in his findings, he chose to ascribe less weight to Dr. Shah's opinions because they consistently failed to include treatment notes and were thus unenlightening. Tr. 22.

For these reasons, the ALJ's decision to afford greater weight to the consultative examiners than to Dr. Shah is justified. Plaintiff has not identified any error here.

### 5. Alleged Improper Characterization of the Vocational Expert's Testimony at Step Five

Plaintiff argues that the ALJ's step five finding is erroneous because the hypothetical questions to the vocational expert did not include mental or manipulative limitations. Pl.'s Br. at 34. The Court disagrees. As noted above, the ALJ included the additional limitations regarding Plaintiff's mental complaints and hand complaints in his questions to the vocational expert, and the vocational expert testified that Plaintiff could still perform the jobs named. Tr. 48-49.

### III.   CONCLUSION

For the foregoing reasons, the Court finds the Commissioner's denial of benefits to Plaintiff to be supported by substantial evidence. The Commissioner's denial of disability benefits is therefore **AFFIRMED.**

Date: December 30, 2015

/s Madeline Cox Arleo
**MADELINE COX ARLEO**
**UNITED STATES DISTRICT JUDGE**